PENNSYLVANIA RAILROAD COMPANY ET AL. *v.* MAC-LENNAN.

[No. 13,431. Filed April 5, 1929. Rehearing denied June 20, 1929.]

*Hodges, Davis & Hodges* and *Harker & Irwin,* for appellants.

*Wildermuth & Force, Stanley G. Schneller* and *O. B. Thiel,* for appellee.

NICHOLS, J.—Action for property damage sustained by appellee by reason of a collision between a train and appellee's automobile at a highway crossing.

To appellee's complaint, appellants filed answer in general denial.

Trial by jury and verdict in favor of appellee for $500. Appellant Pennsylvania Railroad Company filed a motion for a new trial, and both appellants filed a joint mo-

tion for a new trial. Both motions were overruled, and judgment was rendered against both appellants on the verdict. This appeal followed. The errors assigned are the court's action in overruling both motions for a new trial, for the reason that the verdict is not sustained by sufficient evidence, is contrary to law, and error in giving a certain instruction.

It is averred in the complaint, and appears by the evidence, that the Pennsylvania railroad ran in a northerly and southerly direction through Lansing, Illinois; that in said city the said railroad crossed a public highway, known and designated as "Ridge road," at right angles, the said Ridge road running in an easterly and westerly direction through said city.

The averments of the complaint embracing the acts of negligence with which appellants are charged are that appellee looked in both directions and did not see any train approaching; after looking in both directions and not seeing any train approaching, he then started to drive across said railroad tracks; after he had so started to drive across, the motor of his automobile stalled on appellants' tracks and he was unable to start it. After his motor had so stalled, and after he was unable to start it, he then saw a train operated by appellants approaching said intersection of the Pennsylvania tracks and the Ridge road at a high, unlawful and dangerous rate of speed; the engineer and fireman of appellants saw appellee's position and condition and the position of his automobile in plenty of time to have stopped said train before running it against the automobile, but that appellants, by and through said employees, carelessly and negligently ran the train against the automobile; that, by reason of the carelessness and negligence of appellants, its agents and employees, appellee's automobile was damaged beyond repair.

Appellee testified that about two o'clock a. m. May 24,

1925, he was driving his car on the Ridge road, at Lansing, Illinois, approaching the Pennsylvania railroad double-track crossing. The highway is paved with concrete, and grades down to some extent toward the railroad tracks. He stopped at the beginning of the grade and looked up the track. He saw a distant light but heard no signals. He took his foot off the brake to step on the accelerator, and found that the motor was not running. The car rolled down on the track and stalled. He thought the light was probably two miles away. He attempted to start the motor, and, being unsuccessful, left the car, after trying to push it from the track. When the first whistle was sounded, the train was three-quarters of a mile down the track and the automobile was then stalled on the track at the crossing. The engine went about 150 yards past the crossing after the collision.

On cross-examination, appellee testified further that, after the first blast of the whistle, the engine traveled about 200 or 300 yards and then whistled continuously.

Dennis P. Graney, engineer, testified that he gave the regular crossing whistle at the whistling post; that he saw something in the vicinity of the track, when he was about 1,000 feet from the crossing, but did not think it was on the track. The train was running about forty miles an hour. When within 600 to 800 feet of the crossing, he started shrill blasts of the whistle, and at the same time applied the emergency brakes. The engine was stopped about 800 or 900 feet after the air was applied, or about 200 feet west of the crossing; when he started the short blasts, he thought the automobile was close to the tracks but did not know it was on the crossing, as he could see only the lights. The headlight of the engine is not strong enough to make the crossing visible at the whistling post. He believed he could stop the train between the whistling post and the crossing, but he stopped it that night in about 800 or 900 feet, something like that.

Frank D. Moss, conductor of the train, which consisted of fifty-four freight cars, nearly 3,000 tonnage, was in the cabin, and did not see the collision, but corroborated the engineer's testimony with regard to the speed of the train and the setting of the emergency air brake.

Claude L. Miller, fireman, was putting coal in the engine, and did not see the collision. When about 600 to 800 feet from the crossing, he looked up and thought the automobile was clear of the track and returned to his work.

C. H. Klink, brakeman, was on the fireman's seat. He saw the collision, and corroborated the testimony of the engineer.

Appellee contends that "the evidence is not in the record as the certificate of the judge to the purported bill of exceptions containing the evidence shows that it was signed after it was filed." Conceding, without deciding, that it is proper to look to the judge's certificate to determine as to the time when a bill of exceptions is filed, the judge's certificate in this case does not bear out appellee's statement. It appears by the certificate that the longhand manuscript was filed on April 6, 1928, before it was incorporated in the bill of exceptions, and that, on April 7, 1928, the judge signed, sealed and filed the bill of exceptions. But we do not need to go to the judge's certificate to determine as to this matter. The clerk of the court, in his certificate to the transcript, certifies that the reporter of the Lake Superior Court took down in shorthand the notes of the evidence introduced on the trial of the cause, which she subsequently transcribed into longhand, and filed the transcript thereof in the clerk's office, which transcript was subsequently embodied in the bill of exceptions presented to and signed by the court, and filed

and made a part of the record in this cause. We have before us a return to a writ of *certiorari*, by which it appears that, by *nunc pro tunc* proceedings, the order-book entries were made to show the foregoing facts. Thus, it clearly appears that the bill of exceptions containing the evidence is in the record. Appellee has not challenged the statement of the record as set out above.

Likewise he has not attempted to answer appellant's contention that it was insufficient to sustain the verdict. Appellee's averment in his complaint that the train was being operated at a high and dangerous rate of speed is not, within itself, and in the absence of any averment to the effect that such operation was negligent, a sufficient allegation of negligence, it appearing only that the train was being operated at a speed of about forty miles per hour, and there being no evidence of any conditions or surroundings from which the jury might infer that such operation was negligent. The only other allegation of negligence in the complaint is that the engineer and fireman saw appellee's position and condition and the condition of his automobile in ample time to have stopped the train before running against the automobile, but that they carelessly and negligently ran the train against the automobile. There is no evidence to sustain the averment. On the contrary, the evidence shows that the engineer sounded his whistle at the whistling post, and that, when about 1,000 feet from the crossing, he saw something, and did not think it was on the track, seeing only the lights, but that, when about 600 to 800 feet from the crossing, he set the emergency brakes and started shrill blasts of the whistle. By means of the emergency brakes, he stopped the train that night in 800 or 900 feet, which was much less than the distance which he testified was usually required. He testified that he would think that he could stop with the emergency brakes in 1,500 to 1,800 feet.

It is to be kept in mind that the train consisted of fifty-four cars, weighing about 3,000 tons. There is no evidence of any negligence on the part of the train crew.

Instruction No. 13 given by the court of its own motion instructed the jury as to the duty of the engineer with reference to giving sufficient signals of the approach of the train, and instruction No. 14 instructed the jury that a traveler approaching a railroad crossing has a right, within reasonable limits, to assume that the railroad company will give the signals required by the statute in approaching highway crossings, and the failure of the railroad company so to do is negligence within itself. These instructions were not applicable to the evidence and should not have been given. *Nickey* v. *Dougan* (1905), 34 Ind. App. 601, 611, 73 N. E. 288.

Judgment is reversed, with instructions to grant a new trial.

McMahan, P. J., not participating.